UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH WOJCIECHOWSKI, THOMAS
ROSANO, WARREN MARSH, JOHN
COTOGGIO, EDWARD WEBER, JOSEPH
VITTA, and JOHN ULRICH in their capacities as
Trustees of Local 812 Health Fund, JOSEPH
WOJCIECHOWSKI, THOMAS ROSANO,
JOSEPH VITTA, STANLEY ISRAEL, RODNEY
BRAYMAN, and GERARD COTTRELL in their
capacities as Trustees of Soft Drink & Brewery
Workers Union, Local 812, Retirement Fund,
LOCAL 812 HEALTH FUND, SOFT DRINK &
BREWERY WORKERS UNION, LOCAL 812
RETIREMENT FUND,

**MEMORANDUM AND ORDER**
09 CV 2579 (DRH) (GRB)

              Plaintiffs,

          - against -

BOENING BROS., INC.,

             Defendant.
----------------------------------------------------------------X
**APPEARANCES:**

**LAW OFFICES OF THOMAS A. THOMPSON**
Attorneys for Plaintiffs
66 Main Street
Suite 802
Yonkers, New York 10701
By:    Thomas A. Thompson, Esq.

**KELLEY, DRYE & WARREN LLP**
Attorneys for Defendant
101 Park Avenue
New York, New York 10178
By:    Eugene T. D'Ablemont

**HURLEY, Senior District Judge:**

      Plaintiffs Joseph Wojciechowski, Thomas Rosano, Warren Marsh, John Cotoggio,

Edward Weber, Joseph Vitta, and John Ulrich, in their capacities as trustees of the Local 812

Health Fund (the "Health Fund Trustees"), as well as Joseph Wojciechowski, Thomas Rosano,

Joseph Vitta, Stanley Israel, Rodney Brayman, and Gerard Cottrell, in their capacities as trustees

fo the Soft Drink & Brewery Workers Union, Local 812, Retirement Fund (the "Retirement Fund

Trustees") (collectively, the "Trustees"), the Local 812 Health Fund (the "Health Fund"), and the

Soft Drink & Brewery Workers Union, Local 812, Retirement Fund (the "Retirement Fund")

(collectively, the "Funds") commenced this action pursuant to Sections 502(a)(3) and 515 of the

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132(a)(3) and 1145

("ERISA") and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185

("LMRA").  Plaintiffs allege that defendant Boening Bros., Inc. ("defendant" or "Boening")

violated the applicable collective bargaining agreement, the respective trust agreements of the

Funds, and ERISA by failing to cooperate in the Funds' audit of defendant's books and records.

Plaintiffs seek injunctive relief and an award of costs and attorneys' fees.

Presently before the Court is plaintiffs' motion for summary judgment and defendant's

cross-motion for summary judgment.  For the reasons set forth below, plaintiffs' motion is

denied and defendant's motion is granted.

## BACKGROUND

The material facts, drawn from the parties' pleadings, Local Civil Rule 56.1 Statements,

and evidentiary submissions, are undisputed unless otherwise noted.

### The Parties

The Health Fund and the Retirement Fund are both multiemployer, labor-management

trust funds established and maintained pursuant to their respective trust agreements and various

collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C.

§ 186(c)(5).  (Compl. ¶¶ 4, 5.)  The Health Fund is an "employee welfare benefit plan," an "employee benefit plan," and a "multiemployer plan" within the meaning of ERISA.  (*Id.* ¶ 4.) The Health Fund "receives contributions from employers who are parties to collective bargaining agreements with Soft Drinks, Brewery Workers and Delivery Employees, Needletrades, Industrial and Textile Employees, Greater New York and Vicinity, Local Union No. 812, International Brotherhood of Teamsters" (the "Union"), and then invests and maintains such money and provides health and insurance benefits to eligible employee and their dependents. (*Id.*)

The Retirement Fund is an "employee pension benefit plan," an "employee benefit plan," and a "multiemployer plan" under ERISA.  (*Id.* ¶ 5.)  The Retirement Fund receives contributions from employers who are parties to collective bargaining agreements with the Union, invests and maintains such money, and provides pension and retirement benefits to eligible employees and their dependants.  (*Id.*)  The Health Fund Trustees and the Retirement Fund Trustees are fiduciaries of the Health Fund and Retirement Fund, respectively, pursuant to ERISA.  (*Id.* ¶¶ 6, 7.)

Defendant is a "family-owned beer distributor located in Suffolk County."  (Def.'s 56.1 ¶ 1.)

***The Collective Bargaining Agreement***

Boening and the Union (or its predecessor union) have been parties to a series of successive collective bargaining agreements dating back to at least 1973.  (*Id.* ¶ 3.)  The relevant collective bargaining agreements were effective between June 1, 2002 and May 31, 2007 (the "First CBA"), and June 1, 2007 and May 31, 2011 (the "Second CBA") (collectively, the

3

"CBA").[1]  (*See* Decl. of Thomas A. Thompson, Esq., dated Mar. 7, 2011 "Thompson Decl.",

Exs. C, D.)  The bargaining unit covered by the CBA includes all Boening employees working as

drivers, driver-helpers, warehousemen, and preventive maintenance mechanics.  (*Id.*, Ex. C at 1,

Ex. D at 1.)  Boening asserts that it employs approximately 28 bargaining unit employees.

(Def.'s 56.1 ¶ 4.)  The CBA expressly excludes the following employees from the bargaining

unit: executives, supervisors, salesmen, clerical employees, guards, draft technicians, and all

other employees.  (Thompson Decl., Ex. C at 1, Ex. D at 1.)  Boening employs approximately

101 employees who are expressly excluded from the bargaining unit.  (Def.'s 56.1 ¶ 5.)

***The Trust Agreements***

        The Health Fund has continuously operated under the Local 812 Health Fund Trust

Agreement since June 21, 1996.  (Pls.' 56.1 ¶ 3.)  The Retirement Fund has continuously

operated under the Local 812 Retirement Fund Trust Agreement since December 13, 1995.  (*Id.* ¶

5.)  Boening is not a signatory to either Trust Agreement, and the Trust Agreements are not

incorporated by reference or mentioned in the CBA.  (Def.'s 56.1 ¶ 8.)

        Both Trust Agreements contain identical language that provides that contributions to each

Fund shall be made by employers in accordance with the terms of the applicable collective

bargaining agreement.  (*See* Thompson Decl., Ex. A at 12, Ex. B at 13.)  In Articles 16 and 17 of

the CBA, Boening agreed to make contributions to the Health Fund and Retirement Fund,

respectively, for "regular" employees.  (*See* Thompson Decl., Ex. C at 17, Ex. D at 17-18.)  The

---

        [1]        The cited portions of the collective bargaining agreements, unless otherwise
noted, have largely identical or substantially similar language.  Moreover, the parties have not
asserted that any differences between the two agreements impact the Court's analysis in any way.
For ease of reference, therefore, the Court will refer to both collective bargaining agreements as
the "CBA."

4

term "regular employee" is defined by the First CBA as an employee who has completed his

applicable trial period of employment.  (*Id.*, Ex. C at 19.)  The Second CBA defines "regular

employee" as an employee who has reached a certain level of seniority or service, which is

measured from the date of the employee's entrance into the Union.  (*Id.*, Ex. D at 20.)  Boening's

monthly remittances to the Funds on behalf of the regular employees in the bargaining unit are

accompanied by a written report containing the employees' names and social security numbers.

(Def.'s 56.1 ¶ 7.)

***Other Relevant Provisions of the CBA***

Article 9 of the CBA provides that any seasonal or summer help employees hired by

Boening are not required to join the Union and are not eligible for any benefits provided for by

the CBA.  (Thompson Decl., Ex. C at 8, Ex. D at 8.)  Thus, Boening is not required to make any

contributions to the Funds on their behalf.

Article 15 of the CBA provides that employees outside of the bargaining unit may

perform "work normally performed by bargaining unit employees," so long as bargaining unit

employees are not laid off or denied overtime opportunities as a result.  (*Id.*, Ex. C at 16, Ex. D at

17.)

***The Audits***

Article 6.5 of each Trust Agreement provides as follows: "The Trustees may, by their

respective representatives, examine the pertinent employment and payroll records of each

Employer at the Employer's place of business whenever such examination is deemed necessary

or advisable by the Trustees in connection with the proper administration of the [ ] Fund."

(Thompson Decl., Ex. A at 13, Ex. B at 14.)  Article 17 of the Second CBA, which covers

5

employer contributions to the Retirement Fund, provides: "A representative of the Union shall have the right to inspect the books and records of bargaining unit employees for the purposes of ascertaining that the required contributions have been made." (Thompson Decl., Ex. D at 18.) The language in Article 17 of the First CBA contains no such provision. (*Id.*, Ex. C at 17.) Such language is also missing from both the First and Second CBA's Article 16, which applies to Boening's contributions to the Health Fund.

Novak Francella LLC (the "Firm") has served as the Funds' accountant from 2003 through the present. (Pls.' 56.1 ¶ 10.) As part of its accounting services for the Funds, the Firm conducts periodic payroll audits of those employers who have entered into collective bargaining agreements with the Union and have made monthly contributions to the Funds pursuant to those agreements. (*Id.* ¶ 11.) In August 2006, the Firm commenced a payroll audit of Boening for the period between January 1, 2003 and June 30, 2006. (*Id.* ¶ 12.) In March 2009, the Firm conducted a second audit of Boening for the period between July 1, 2006 and December 31, 2008. (*Id.* ¶ 13.)

In the course of conducting these audits, the Firm requested that Boening provide its payroll records and disbursements journals relating to both its bargaining unit employees and non-bargaining unit employees. (*Id.* ¶ 14.) The Firm planned to review these disbursement journals in order to "identify those employees, independent contractors and/or other persons who were compensated by Boening but not recorded in the company's payroll records." (*Id.*) According to Brian Francella, the principal of the Firm, these requested disbursements journals could "verify whether such employees, independent contractors and/or other persons were performing bargaining unit work for which Boening was obligated under its [CBA] to make

6

contributions to the Funds."  (Decl. of Brian Francella, dated Mar. 7, 2011 ("Francella Decl.")
¶ 8.)

By letter dated December 11, 2008, Boening refused to produce its cash disbursements
journals to the extent that they "contain[ed] records of payments to Boening employees who are
either not in the bargaining unit, . . . or who are excluded from participating in the Pension Fund
because they are not regular employees" because "Boening is not required to make any
contributions on their behalf."  (*See* Decl. of Eugene T. D'Ablemont, Esq., dated April 20, 2011
("D'Ablemont Decl."), Ex. 2.)  The following day, the Union's attorney sent Boening's attorney
a list of employees whom a Union delegate had observed performing bargaining unit work at
Boening facilities.  (*Id.*, Ex. 3.)  In response, Boening's attorney opined that "[t]he fact that a
[Union] delegate may have observed employees performing bargaining unit work for whom no
contributions were made into the Retirement Fund is of no moment" because Article 15 of the
CBA "expressly provides . . . that employees outside the bargaining unit can perform work
normally performed by bargaining unit employees . . . ."  (*Id.*, Ex. 4.)  Boening reviewed the list
of employees submitted by the Union and concluded that it was required to make (and had made)
contributions for only two of those employees during the period covered by the first audit.  (*Id.*)[2]

On March 16, 2009, presumably in connection with the second audit, the Firm again
demanded that Boening produce its cash disbursements journals related to both bargaining unit
employees and non-bargaining unit employees.  (*See id.*, Ex. 5 (Apr. 16, 2009 Letter).)  By letter
dated April 16, 2009, Boening refused to produce the cash disbursements journals for non-

---

[2]    The Union had submitted this issue to arbitration in November 2008.  (*See*
D'Ablemont Decl, Ex. 1.)  Apparently, this exchange of correspondence prompted the Union to
withdraw the issue from arbitration.  (*See id.*, Ex. 5 (Apr. 16, 2009 Letter).)

7

bargaining unit employees, but offered to "make the same books and records available for inspection for the new audit period of July 1, 2006 through December 31, 2008 as it did for the prior audit period."  (*Id.*)  It appears that, at this point, Boening has produced to the Firm all of the documents its seeks except for the cash disbursements journals related to non-bargaining unit employees.  (*See* Pls.' Mem. at 2.)

***DISCUSSION***

**I.      Legal Standard**

     Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

     To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002,

8

1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence,"
*Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting
*Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v.*
*U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith*
*Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her
pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are
not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations
omitted).

The district court, in considering a summary judgment motion, must also be "mindful of
the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928
(5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the
respective parties will bear at trial guide district courts in their determination of summary
judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the
non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's
burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an
essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the
underlying burden of proof offers evidence that the non-movant has failed to establish her claim,
the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not
'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.   *Plaintiffs Have Failed to Demonstrate Their Entitlement to the Requested Injunctive Relief; Defendant is Entitled to Judgment as a Matter of Law*

It appears undisputed that plaintiffs are entitled to production of – and that Boening has produced – requested payroll records and disbursement journals for those employees who are members of the bargaining unit and for whom Boening unquestionably has an obligation to make contributions to the Funds.  Plaintiffs seek injunctive relief "compel[ling] Boening to produce its disbursements journal, even though these records may include employees not covered by the [CBA] to determine the covered or uncovered status of Boening's employees, independent contractors and other persons whose compensation is not reflect[ed] in the payroll records Boening did make available to Plaintiffs' auditors."  (Pls.' Mem. at 8.)  The Court concludes that plaintiffs have failed to establish their entitlement to the injunctive relief sought.  In particular, plaintiffs have not shown that the requested disbursement journals will help them identify employees for whom Funds contributions should have been (but were not) made.  Put simply, plaintiffs have proffered no evidence to show that a review of the disbursements journals would help them identify employees for whom Boening was required to make Funds contributions, to wit, bargaining unit employees who met the contractual definition of "regular employees."

### A.   *The Applicability of the CBA to the Dispute Over the Proper Scope of the Audit*

Plaintiffs assert that "[u]nder the plain terms of the Trust Agreements, the Plaintiff Trustees are authorized to audit Boening's employment and payroll records."  (Pls.' Mem. at 8.) Defendant does not dispute plaintiffs' authority to conduct the audits in question; rather, it argues that the Funds are attempting to conduct an audit that is broader in scope than the CBA permits. Defendant cites Article 17 of the Second CBA, which provides: "A representative of the Union shall have the right to inspect the books and records *of bargaining unit employees* for the purpose

of ascertaining that the required contributions have been made." (Def.'s Mem. at 16 (emphasis in the original) (citing Thompson Decl., Ex. D at 18).) Defendant argues that the Funds may not enforce rules and regulations that conflict with written provisions of the CBA. (*Id.* (citing *N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv.*, 382 F.3d 272 (2d Cir. 2004); *LaBarbera v. Collyer Equip. Corp.*, 337 F.3d 132 (2d Cir. 2003).)

In opposition, plaintiffs assert first that the above-cited portion of Article 17 does not apply to any audit of Boening's contributions to the Health Fund, but applies only to an audit of contributions to the Retirement Fund. (*See* Pls.' Opp'n at 3.) Defendant does not appear to argue this point, nor does it respond to plaintiffs' contention that Article 16, which governs contributions made to the Health Fund, does not contain similar language regarding the proper scope of an audit. Accordingly, the Court finds that the CBA is silent as to the proper scope of an audit of Boening's contributions to the Health Fund.

Next, plaintiffs argue that Article 17 of the Second CBA, by its terms, applies only to an audit of Boening's contributions to the Retirement Fund that is conducted by "a representative of the Union." (*See* Pls.' Opp'n at 3.) Plaintiffs assert that the Funds are a separate entity from the Union and because the Funds (not the Union) hired the Firm to conduct the audit, the audit was not conducted by "a representative of the Union" within the meaning of Article 17 of the Second CBA. (*Id.*) Defendant does not respond to this contention either. Ultimately, however, the Court need not resolve the issue of Article 17's applicability to the Firm's audits of the Retirement Fund because, as discussed below, the end result is the same whether or not Article

11

17 of the Second CBA applies.[3]

**B.      *The Proper Scope of the Audits***

With respect to determining the proper scope of the audits, the application of any of Article 17 of the Second CBA, or the Trust Agreements,[4] or ERISA's common law of trusts will net the same result.

As noted above, Article 17 of the Second CBA provides that, with respect to the Retirement Fund:  "A representative of the Union shall have the right to inspect the books and records *of bargaining unit employees* for the purpose of ascertaining that the required contributions have been made."  (Thompson Decl., Ex. D at 18 (emphasis added).)

Section 6.5 of the Trust Agreements[5] authorizes the Trustees or their representatives to "examine the pertinent employment and payroll records of each Employer . . . whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the [ ] Fund."  (Thompson Decl., Ex. A at 12-13, Ex B at 13-14.)  As discussed

---

[3]       Although neither party raises the issue, the Court notes that the cited language from Article 17 is not present in the First CBA, and that the two audits at issue covered a time period largely governed by the First CBA.

[4]       Defendant notes that it never signed the Trust Agreements and that they were not incorporated into the CBA.  Defendant asserts however, that the Trust Agreements "are in complete harmony with the express written terms of the CBA," and "are consistent with the holding of [the Second Circuit] in [*N.Y. Teamsters Conference Pension & Ret. Fund v. Boening Brothers, Inc.*, 92 F.3d 127 (2d Cir. 1996)]."  (Defs.' Mem. at 17.)  As noted in the text above, the Court agrees and finds the result to be the same whether by virtue of the interpretation of Article 17 of the Second CBA, or the Trust Agreements, or the application of *Boening*. Accordingly, the Court does not address the issue – which has not been briefed by the parties – of whether defendant, as a non-signatory to the Trust Agreements, is bound by Section 6.5 therein.

[5]       The Health Fund Trust Agreement and the Retirement Fund Trust Agreement contain identical language on this point.

more fully below, the Court finds that the disbursements journals reflecting payments made to non-bargaining unit employees are not "pertinent" to the "proper administration" of the Funds.

In *New York State Teamsters Conference Pension and Retirement Fund v. Boening Brothers, Inc.*, 92 F.3d 127, 133 (2d Cir. 1996), the Second Circuit held that "any audit conducted pursuant to the Fund's fiduciary duties is necessarily circumscribed by the Fund's coordinate obligation not to abuse this authority." The Circuit reiterated the following standard regarding the appropriate scope of a fund's audit, which was first articulated by the Supreme Court in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*:

> In light of ERISA's standards, . . . [an] audit request would be illegitimate under the standard of loyalty if it were actually an effort by plan trustees to expand plan coverage beyond the class defined in the plans' terms or to acquire information about the employers to advance union goals. [Similarly,] the audit would be imprudent if it were clearly wasteful of plan assets or unrelated to legitimate plan concerns.

*Boening*, 92 F.3d at 134 (quoting *Central States*, 472 U.S. 559, 571 n.12 (1985)). The crux of Boening's objection[6] is that the Funds, by seeking disbursements journals for payments made to non-bargaining unit members, are conducting an audit that is "unrelated to legitimate plan concerns." *See id*.

"ERISA clearly assumes that [Fund] trustees will act to ensure that a plan receives all funds to which it is entitled, . . . and that trustees will takes steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms." *Central States*, 472 U.S. at 571. The Second Circuit has made clear, however, that a

---

[6]    Although Boening suggests that the audits in this case might be motivated by the Funds' desire "to expand Boening's contribution obligations beyond the regular employees in the bargaining unit," (Def.'s Mem. at 11), it has cited no record evidence supporting this theory.

Fund auditing a contributing employer "is authorized, in implementation of its fiduciary duties, to conduct an audit that is no broader in scope than necessary to achieve its objective and no more extensive than the scope of the trustees' authority." *Boening*, 92 F.3d at 134.  Here, the stated goal of the Funds' audit was to "verify whether [ ] employees [who received compensation from Boening that was not recorded in the company's payroll records], independent contractors and/or other persons were performing bargaining unit work for which Boening was obligated under its collective bargaining agreement with [the Union] to make contributions to the Funds." (Francella Decl. ¶ 8.)  Plaintiffs further assert that an audit of Boening's disbursements journals will permit the Funds "to verify whether the cash recipients recorded there are accurately classified by Defendant as non-bargaining unit employees."  (Pls.' Opp'n at 5.)

The Court finds that an inspection of Boening's disbursements journals that reflect payments made to non-bargaining unit employees and independent contractors will not further either of the Funds' goals as stated above.  Pursuant to the CBA, Boening is obligated to make contributions to the Funds for "regular employees," (*see* Thompson Decl., Ex. C at 17, Ex. D at 17-18), who are defined as *bargaining unit members* who have completed a specified term of service that is measured from either their date of hire or the date they joined the Union.  (*See id.*, Ex. C at 19, Ex. D at 20.)  Boening, therefore, is not obligated to make contributions for non-bargaining unit employees and independent contractors – such individuals cannot possibly meet the definition of "regular employees."  Thus, an examination of Boening's disbursements journals that reflect payments made to non-bargaining unit employees and independent contractors will not allow the Funds to "identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms."  *See Central*

14

*States*, 472 U.S. at 571.

Nor have plaintiffs explained how a review of Boening's cash payments to non-bargaining unit employees and independent contractors will assist the Funds in identifying "whether the cash recipients recorded there are accurately classified by Defendant as non-bargaining unit employees."[7]  (*See* Pls.' Opp'n at 5; *see also id.* at 6 ("[T]he Funds seek to independently verify whether certain employees claimed by Defendant not to be covered by the CBA are in fact covered in accordance with its terms and, if so, collect the unpaid contributions owed to the Funds.")) Presumably, the Funds would examine the disbursements journals to ascertain whether any non-bargaining unit employee was paid by Boening to perform bargaining unit work.  The CBA specifically provides, however, that non-bargaining unit employees are permitted to perform bargaining unit work, so long as bargaining employees are not laid off or denied overtime opportunities as a result.  (Thompson Decl., Ex. C at 16, Ex. D at 17.)  The CBA also sets forth that no contributions are required for seasonal/summer help employees.  (*Id.*, Ex. C at 8, Ex. D at 8.)  Accordingly, even if the Funds were to discover that Boening made cash disbursements to non-bargaining unit employees for their performance of bargaining unit work, plaintiffs fail to explain how such discovery would lead to the conclusion that those employees were mis-classified and, ultimately, that Boening should have made contributions for them.  This facet of the CBA distinguishes this case from those in which the courts permitted an audit of payroll and disbursement records for both bargaining unit and non-bargaining unit employees. *Cf. Central States*, 472 U.S. at 562 (noting the multiemployer plans at issue provided benefits "to

---

[7]        The Court assumes, for purposes of the argument, that such verification is an appropriate task for the Funds – as opposed to Union officers – to pursue.  (*See* Def.'s Opp'n at 3-4.)

employees performing work that is covered by collective-bargaining agreements"); *Williams v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 1991 WL 787080, at *3 (W.D.N.Y. Dec. 23, 1991) (collective bargaining agreement required employer to make contributions for "all employees doing bargaining unit work . . . whether or not they are included in the bargaining unit").

Thus, the Court finds that Boening's disbursements journals regarding payments made to non-bargaining unit employees and independent contractors are not "pertinent" documents under Section 6.5 of the Trust Agreements, and are not related "to legitimate plan concerns." *Boening*, 92 F.3d at 134 (quoting *Central States*, 472 U.S. at 571 n.12).[8]  Such documents need not be produced in connection with the Funds' audit.

### *CONCLUSION*

For the reasons set forth above, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.  The Clerk of the Court is respectfully directed to close this case.


**SO ORDERED.**

Dated: Central Islip, New York
      March 16, 2012                     /s/_____
                                            Denis R. Hurley
                                            Unites States District Judge

---

[8]     Additionally, these documents fall outside the scope of an appropriate audit of Boening's contributions to the Retirement Fund, to the extent Article 17 of the Second CBA applies.